**FILED
IN MY OFFICE**

10:08    MAR 22 2022

COUNTY & CIRCUIT CLERK
SHELLY DOWNING
BY_____D.C.

## IN THE CIRCUIT COURT OF IZARD COUNTY, ARKANSAS
## CIVIL DIVISION

**RANDALL LIPFORD**                                    **PLAINTIFF**

**VS.**                 **NO. 33CV-22-20**

**ATRIUM MEDICAL CORPORATION
AND MAQUET CARDIOVASCULAR
US SALES, LLC**                                    **DEFENDANTS**

### COMPLAINT

COMES NOW Plaintiff, Randall Lipford, by and through his Attorney, David A. Hodges, and for his claims against Defendants states as follows:

### PARTIES

1.      Plaintiff had one of Defendants' hernia mesh products inserted in his body to treat a hernia. Plaintiff is a resident of Izard County, Arkansas.

2.      Defendant Atrium Medical Corporation ("Atrium") is incorporated under the laws of Delaware. At all pertinent times, Atrium's manufacturing and support facilities were located in Hudson, NH. Atrium is a medical device company involved in the research, development, testing, manufacture, production, marketing, promotion and/or sale of medical devices including Mesh Products (hereinafter "Mesh Products" or "product" or "mesh").


EXHIBIT
A

3.      Defendant Maquet Cardiovascular US Sales, LLC ("Maquet") is a limited liability company organized under the laws of New Jersey, with its principal place of business located at 45 Barbour Pond Drive, Wayne, NJ 07470. Since October of 2011, Atrium has operated within, and as a business unit of, Maquet.

4.      Defendants are individually, jointly and severally liable to Plaintiff for damages resulting from the Defendants' design, manufacture, marketing, packaging, labeling, distribution, sale and placement of its defective mesh products at issue in the instant suit, effectuated directly and indirectly through their respective agents, servants, employees and/or owners, all acting within the course and scope of their representative agencies, services, employments and/or ownership.

5.      Defendants are vicariously liable for the acts and/or omissions of its employees and/or agents who were at all times relevant hereto acting on behalf of Defendants and within the scope of their employment or agency with Defendants.

6.      At all times material to this action, Defendants have designed, patented, manufactured, packaged, labeled, marketed, and sold and distributed a line of hernia mesh products. These products were designed primarily for the purposes of treating hernias. These products share common design elements and common defects. Moreover, these products were cleared for sale in the

U.S. after the Defendants made assertions to the Food and Drug Administration of "Substantial Equivalence" under Section 510(k) of the Food, Drug and Cosmetic Act; this clearance process does not require the applicant to prove safety or efficacy.

## VENUE AND JURISDICTION

7.   The Circuit Court of Izard County, Arkansas, has jurisdiction of this case because of the fact the Plaintiff is seeking damages against the Defendant in this civil proceeding thereby giving this Court jurisdiction under Ark. Code Ann. § 16-13-201.

8.   The venue for this action is in Izard County, Arkansas, pursuant to the provisions of Ark. Code Ann. § 16-60-112 and Ark. Code Ann. § 16-55-213.

9.   A substantial part of the events and omissions giving rise to Plaintiff's causes of action occurred in Izard County.

## FACTUAL BACKGROUND

10.   Defendants' Mesh Products were designed, patented, manufactured, labeled, packaged, marketed, sold, and distributed by Defendants at all relevant times herein.

11.   Defendants were responsible for the research, design, development, testing, manufacture, production, marketing, packaging, promotion, distribution

and sale of Mesh Products, as well as providing the warnings and instructions concerning the product.

12.    Among the intended purposes for which Defendants designed, manufactured, marketed, and sold Mesh Products was for use by surgeons for hernia repair surgeries—the purpose for which the Mesh was implanted in Plaintiff Randall Lipford.

13.    Defendants' Hernia Mesh Products are designed, intended, and utilized for permanent implantation in the human body.

14.    Defendants represented to Plaintiff and Plaintiff's physician(s) that Mesh Products was a safe and effective product for hernia repair and for permanent implantation in humans.

15.    Defendants failed to perform and/or rely on adequate testing and research in order to determine and evaluate the risks and benefits of the Mesh Products.

16.    Defendants' Mesh Products was defectively designed and/or manufactured, was not reasonably safe for its intended use in hernia repair, and the risks of the design outweighed any potential benefits associated with the design. As a result of the defective design and/or manufacture of the Mesh Products, there was an unreasonable risk of severe adverse reactions to the mesh or mesh components, including, but not limited to: chronic pain; recurrence of hernia; foreign body response; rejection; infection; inadequate or

failure of incorporation/ingrowth; scarification; improper wound healing; excessive and chronic inflammation; allergic reaction; adhesions to internal organs; erosion; abscess; fistula formation; granulomatous response; seroma formation; nerve damage; tissue damage and/or death; and other complications.

17.    Defendants failed to design and establish a safe, effective procedure for removal of the Mesh Products; thus, in the event of a failure, injury, or other complication, it is impossible to easily and safely remove the Mesh Products.

18.    Defendants had sole access to material facts concerning the defective nature of the Products and their propensity to cause serious and dangerous side effects.

19.    Upon information and belief, Defendants made misleading statements to physician(s) about potential adverse events and attempted to convince physician(s) of alternative causes other than the Mesh Products.

20.    Upon information and belief, Defendants omitted information regarding potential adverse events in discussions with physician(s).

21.    Upon information and belief, Defendants "stealth recalled" multiple types of Mesh Products that were experiencing high levels of adverse events by simply halting production of certain types of Mesh Products without notifying consumers or physician(s) of the recall or high levels of adverse events.

22.    Upon information and belief, Defendants manipulated altered, skewed, slanted, misrepresented, and/or falsified pre-clinical and/or clinical studies to bolster the perceived performance of the Mesh Products and/or diminish adverse events.

23.    Upon information and belief, Defendants paid doctors, surgeons, physician(s), and/or clinicians to promote the Mesh Products, but did not readily disclose this information.

24.    Defendants marketed and sold the Mesh Products to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, aggressive marketing to healthcare providers at medical conferences, hospitals, and private offices, as well as the provision of valuable benefits to healthcare providers. Defendants further utilized documents, patients, brochures, and website.

25.    Defendants have, at all times relevant hereto, provided incomplete, insufficient, and misleading training and information to physician(s), in order to increase the number of physician(s) utilizing Mesh Products, thereby increasing sales. This has led to the dissemination of inadequate and misleading information to patients, including Plaintiff.

26.    Upon information and belief, Defendants have been notified about the widespread catastrophic complications associated with the Mesh Products

-6-

by leading hernia repair specialists, surgeons, hospitals, patients, internal consultants, and/or employees.

27.    Despite notice and knowledge of complications, not a single Mesh Products has been formally recalled from the market.

28.    Defendants have misrepresented the efficacy and safety of the Mesh Products, through various means and media, actively and intentionally misleading the medical community, patients, and the public at large.

29.    Defendants' Mesh Products continue to be marketed to the medical community and to patients as safe, effective, reliable medical devices, implanted by safe and effective surgical techniques for the treatment of hernia repair and soft tissue repair, and as safer or more effective as compared to the traditional products and procedures, including competing hernia mesh products.

30.    In reliance on Defendants' representation, Plaintiff's physician(s) were induced to, and did use, the Mesh Products.

31.    Defendants' Mesh Products were, at all times, utilized and implanted in a manner foreseeable and/or intended by Defendants.

32.    The Mesh Product implanted into the Plaintiff was in the same or substantially similar condition as when it left Defendants' possession, and/or in the condition directed by and expected by Defendants.

33.    As a direct and proximate result of having the Mesh Product implanted, Plaintiff has been severely and permanently injured.

34.    These manufacturing and design defects associated with the Mesh Products were directly and proximately related to the injuries suffered by Plaintiff Randall Lipford.

35.    Neither Plaintiff nor his implanting physician(s) were adequately warned or informed by Defendants of the defective and dangerous nature of Mesh Product. Moreover, neither Plaintiff nor his implanting physician(s) were adequately warned or informed by Defendants of the risks associated with the Mesh Product.

36.    The Mesh Product implanted in the Plaintiff failed to reasonably perform as intended. The mesh caused serious and permanent injuries, resulting in the need for additional treatment, including additional corrective surgery or surgeries.

37.    Plaintiff's severe adverse reactions, and the necessity for additional treatment, directly and proximately resulted from the defective and dangerous condition of the product and Defendants' defective and inadequate warnings about the risks associated with the product.

38.    Plaintiff has suffered, and will continue to suffer, both physical injury and pain and mental anguish, permanent and severe injury, including scarring and disfigurement, lost wages and earning capacity, and has incurred substantial medical bills and other expenses, resulting from the defective and

dangerous condition of the product and from Defendants' defective and inadequate warnings about the risks associated with the product.

39.    Plaintiff was implanted with a Mesh Product by Atrium on March 21, 2019.

40.    Plaintiff began suffering from severe pain due to the Atrium Product in early 2021.

41.    Plaintiff was in the hospital for weeks due to this pain and has suffered further consequences due to the Atrium implant.

## **COUNT I: NEGLIGENCE**

42.    Plaintiff re-alleges and incorporates by reference the previous paragraphs of this Complaint as if each were set forth fully and completely herein.

43.    At all relevant times, Defendants had a duty to individuals, including Plaintiff Randall Lipford, to exercise reasonable and ordinary care in the manufacture, design, packaging, labeling, instructions, warnings, sale, marketing, and distribution of the Defendants' Mesh Products, as well as in the recruitment and training of physician(s) to implant the Mesh Products.

44.    Defendants breached their duty of care to the Plaintiff, as aforesaid, in the manufacture, design, packaging, labeling, warnings, instructions, sale, marketing, distribution, and recruitment and training of physician(s) to implant the Mesh Products.

-9-

45.    Defendants breached their aforementioned duty by:

    a.    Failing to design the Products so as to avoid an unreasonable risk of harm to the patients in whom the Products were implanted, including Plaintiff Randall Lipford;

    b.    Failing to manufacture the Products so as to avoid an unreasonable risk of harm to patients in whom the Products were implanted, including Plaintiff Randall Lipford;

    c.    Failing to use reasonable care in the testing of the Products so as to avoid an unreasonable risk of harm to patients in whom the Products were implanted, including Plaintiff Randall Lipford;

    d.    Failing to use reasonable care in inspecting the Products so as to avoid an unreasonable risk of harm to patients in whom the Products were implanted, including Plaintiff Randall Lipford; and/or

    e.    Otherwise negligently or carelessly designing, manufacturing, marketing, labeling, packaging and/or selling the Products.

46.    The reasons that Defendants' negligence caused the Products to be unreasonably dangerous and defective include, but are not limited to:

    a.    The use of polypropylene material in the Products and the immune reaction that results from such material, causing adverse reactions and injuries;

    b.    Biomechanical issues with the design of the Products, including the propensity to shrink or contract inside the body, which causes surrounding tissue to become fibrotic and contract, and results in injury; and/or

    c.    The propensity of the Products to degrade and fragment inside the body, which causes a chronic

inflammatory and fibrotic reaction, resulting in injury over time.

47.    Defendants also negligently failed to warn or instruct Plaintiff or his physician(s) of subjects, including, but not limited to, the following:

  a.    The propensity of the Products to roll, curl, and deform upon insertion into the body;

  b.    The Products' propensities for deterioration, degradation, and fragmentation;

  c.    The Products' propensity to shrink or contract within the body;

  d.    The risk of chronic inflammation resulting from the Products;

  e.    The risk of chronic infections resulting from the Products;

  f.    The need for corrective surgery to adjust, remove, or revise the Products;

  g.    The frequency, severity, and duration of complications associated with the Products;

  h.    The Products defects described herein;

  i.    Treatment with the Products is no more effective than feasible, available alternatives;

  j.    Treatment with the Products exposes patients to more risk than feasible, available alternatives;

  k.    Use of the Products put patients at a greater risk of requiring additional surgery than feasible, available alternatives;

l.  Use of the Products makes any future abdominal surgery on the patient much more complex and dangerous than feasible, available alternatives; and/or

m.  Removal of the Products due to complications may significantly impair the patients' quality of life and may not result in complete resolution of their injuries.

n.  Inability to remove Products after injury, which increased risk of future injuries.

48.  Defendants knew or should have known that its failure to exercise ordinary care in the manufacture, design, packaging, labeling, warnings, instructions, sale, marketing, distribution and recruitment and training of physician(s) to implant the Mesh Products would cause foreseeable harm, injuries, and damages to individuals implanted with Mesh Products, including Plaintiff Randall Lipford.

49.  Defendants knew, or in the exercise of reasonably care should have known, that the Mesh Products was defectively and unreasonably designed and/or manufactured, and was unreasonably dangerous and likely to injury patients in whom Mesh Products were implanted. Defendants knew or should have known that Plaintiff and his physician(s) were unaware of the dangers and defects inherent in the Mesh Products.

50.  As a direct, proximate, and foreseeable result of the Defendants' negligence, Plaintiff has experienced significant mental and physical pain and suffering, has sustained severe and permanent injuries requiring past and future

medical treatment, and resulting in disability, impairment, loss of enjoyment of life, loss of care, comfort, consortium, and have incurred financial or economic loss, including, but not limited to, obligations for medical expenses, lost income, and other damages.

51.   Each act or omission of negligence was a proximate cause of the damages and injuries to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II: STRICT LIABILITY – DESIGN DEFECT

52.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

53.   Defendants supplied, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the Mesh Product implanted into Plaintiff. The Mesh Product was defective in its design in that, when it left the hands of Defendants, it was not safe for its anticipated use and safer feasible alternative designs existed that could have been utilized by Defendants. A reasonably prudent medical device manufacturer would not have placed the Mesh Product with its defective design into the stream of commerce.

54.   The Mesh Product was defectively designed when supplied, sold, distributed and/or otherwise placed into the stream of commerce and when it was implanted in Plaintiff.

55.   Defendants expected and intended the Mesh Product to reach users such as Plaintiff Randall Lipford in the condition in which the product was sold.

56.   The implantation of the Mesh Product in Plaintiff was medically reasonable, and was a type of use that Defendants intended and foresaw when it designed, manufactured, and sold the Products.

57.   The Mesh Product was unreasonably dangerous, taking into consideration the utility of said product and the risks involved in its use. The foreseeable risks associated with the design of the mesh were more dangerous than reasonably prudent consumers, such as Plaintiff and/or his physician(s), would expect when the mesh was used for its normal and intended purpose.

58.   The Product implanted in Plaintiff was not reasonably safe for its intended use and was defective as described herein with respect to its design. As previously stated, the Products' design defects include, but are not limited to:

      a.   The use of polypropylene material in the Products and the immune reaction that results from such material, causing adverse reactions and injuries;

      b.   Biomechanical issues with the Products, including, but not limited to, the propensity to contract or shrink inside the body, that in turn cause the surrounding

tissue to be inflamed, become fibrotic, and contract, resulting in injury; and/or

c.  The propensity of the Products to degrade and fragment over time, which causes a chronic inflammatory and fibrotic reaction, and results in continuing injury over time.

59.  The Mesh Product reached Plaintiff's implanting surgeon(s) and was implanted without any substantial change in the condition in which it was supplied, distributed, sold and/or otherwise placed into the stream of commerce.

60.  The Mesh Product failed to perform as safely as ordinary consumers and/or their physician(s) would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer, and the risks and dangers of the Mesh Product outweigh its benefits. The design defects in the Mesh Product were not known, knowable and/or reasonably visible to Plaintiff and/or his physician(s), or discoverable upon any reasonable examination. The Mesh Product was used and implanted in the manner in which it was intended to be used and implanted by Defendants pursuant to the instructions for use and the product specifications provided by Defendants.

61.  The risks of the Mesh Product significantly outweigh any benefits that Defendants contend could be associated with the product.

62.  The polypropylene mesh within the Mesh Product was itself dangerous and defective, particularly when used in the manner intended by

Defendants. The particular polypropylene material used in the Mesh Products was substandard, adulterated, nonmedical grade, and unreasonably subject to oxidative degradation within the body. When implanted adjacent to the bowel and other internal organs, as Defendants intended for Mesh Products, polypropylene mesh is unreasonably susceptible to adhesion, bowel perforation or erosion, fistula formation, and bowel strangulation or hernia incarceration, and other injuries.

63.    The appropriate treatment for complications associated with Mesh Products often involves additional invasive surgery to remove the mesh from the body, thus eliminating any purported benefit that the mesh was intended to provide to the patient.

64.    The Mesh Product was designed and intended for intraperitoneal implantation, which required the product to be placed in contact with internal organs, which unnecessarily increased the risks of adhesion, erosion, fistula formation, and other injuries.

65.    At the time the Mesh Product was implanted in the Plaintiff, there were safer, feasible alternative designs for hernia mesh products that would have prevented Plaintiff's injuries.

66.    The defective and unreasonably dangerous condition of the Mesh Products was the proximate cause of the damages and injuries complained of by Plaintiff.

-16-

67.  As a direct and proximate result of the Mesh Product's aforementioned design defects, Plaintiff has experienced significant mental and physical pain and suffering, have sustained severe and permanent injuries requiring past and future medical treatment, and resulting in disability, impairment, loss of enjoyment of life, loss of care, comfort, consortium, and have incurred financial or economic loss, including, but not limited to, obligations for medical expenses, lost income, and other damages.

68.  Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing, selling and/or distributing defective products.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT III: STRICT LIABILITY – MANUFACTURING DEFECT

69.  Plaintiff re-alleges and incorporate by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

70.  Defendants supplied, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the Product implanted in Plaintiff. The Product was defective in manufacture and construction when they left the hands of Defendants in that the manufacture and construction deviated

from good manufacturing practices and/or manufacturing specifications as would be used and/or maintained by a reasonably prudent and careful medical device manufacturer.

71.    The Product implanted in Plaintiff Randall Lipford was not reasonably safe for the intended uses and was defective as described herein, as a matter of law, with respect to its manufacture, in that it deviated materially from Defendants' design and manufacturing specifications in such a manner as to pose unreasonable risks of serious bodily harm to Plaintiff Randall Lipford.

72.    The Product, as manufactured and constructed by Defendants, was unreasonably dangerous to end consumers, including Plaintiff, and posed an unreasonable degree of risk, danger and harm to Plaintiff.

73.    The Product was expected to reach and did reach Plaintiff's implanting surgeons and Plaintiff without substantial change in the condition in which it was manufactured, supplied, distributed sold and/or otherwise placed in the stream of commerce.

74.    The manufacturing defects in the Product implanted in the Plaintiff were not known, knowable or readily visible to Plaintiff's physician(s) or to Plaintiff, nor were they discoverable upon any reasonable examination by Plaintiff's physician(s) or Plaintiff. The Mesh Product was used and implanted in the very manner in which it was intended to be used and implanted by

-18-

Defendants in accordance with the instructions for use and specifications provided by Defendants.

75.    The Product implanted in Plaintiff was different from the intended design and failed to perform as safely as products manufactured in accordance with the intended design would have performed.

76.    The defective and unreasonably dangerous condition of the Product was a proximate cause of the damages and injuries suffered by Plaintiff Randall Lipford.

77.    As a direct and proximate result of the Product's aforementioned manufacturing defects as described herein, Plaintiff has experienced significant mental and physical pain and suffering, have sustained severe and permanent injuries requiring past and future medical treatment, and resulting in disability, impairment, loss of enjoyment of life, loss of care, comfort, consortium, and have incurred financial or economic loss, including, but not limited to, obligations for medical expenses, lost income, and other damages.

78.    Defendants are strictly liable to Plaintiff Randall Lipford for designing, manufacturing, marketing, labeling, packaging, and selling a defective product.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request

compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IV: STRICT LIABILITY – FAILURE TO WARN

79.     Plaintiff re-alleges and incorporate by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

80.     Defendants' manufacture, design, market, sell and/or otherwise place into the stream of commerce their Mesh Products.

81.     The Product implanted in Plaintiff Randall Lipford was not reasonably safe for the intended uses and was defective as described herein, as a matter of law, due to the lack of appropriate and necessary warnings. As described herein, there was an unreasonable risk that the product would not perform safely and effectively for the purposes for which it was intended, and Defendants failed to design and/or manufacture against such dangers, and failed to provide adequate warnings and instructions concerning these risks. Among other subjects, Defendants did not provide sufficient or adequate warnings regarding:

      a.    The propensity of the Products to roll, curl, and deform upon insertion into the body;

      b.    The unusually high rate of infection associated with the Products;

c.  The frequency of recurrence due to a lack of tissue integration;

d.  The Products' propensities to contract, retract, and/or shrink inside the body;

e.  The Products' propensities for deterioration, degradation, fragmentation, and/or disintegration;

f.  The risk of chronic inflammation resulting from the Products;

g.  The risk of chronic infections resulting from the Products;

h.  The risk of recurrent, intractable pain resulting from the Products;

i.  The need for corrective or revision surgery to adjust or remove the Products;

j.  The frequency, severity, and duration of complications that could arise as a result of the implantation of the Products;

k.  The hazards associated with the Products;

l.  The Products' defects as described herein;

m.  Treatment with these Products is no more effective than feasible, available alternatives;

n.  Treatment with these Products exposes patients to greater risks than feasible, available alternatives;

o.  Use of the Products puts the patient at a greater risk of requiring additional surgery than feasible, available alternatives;

p. Use of the Products makes any future abdominal surgery on the patient much more complex and dangerous than feasible, available alternatives;

q. Removal of the Products due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and/or

r. Complete removal may not result in complete resolution of the complications, including pain.

82. The Defendants failed to properly and adequately warn and instruct Plaintiff and his treating physician(s) that the Mesh Product was designed and/or manufactured in a way that could cause injuries and damages, including lasting and permanent injuries. Defendants further failed to inform and/or warn Plaintiff and his treating physician(s) with respect to the most effective proper technique and methods of implantation and/or the selection of appropriate candidates to receive Mesh Products.

83. The Defendants failed to properly and adequately warn and instruct Plaintiff and his treating physician(s) as to the risks of the Defendants' Mesh Products. To the contrary, Defendants withheld information from Plaintiff and his treating physician(s) regarding the true risks related to implantation of their Mesh Products.

84. The Defendants failed to properly and adequately warn and instruct Plaintiff and his treating physician(s) that inadequate research and testing of the Mesh Products was done prior to Mesh Products being placed on the market

and in the stream of commerce and that Defendants' lacked a safe, effective procedure for removal of the Mesh Products once complications from the same arise.

85.   The Defendants intentionally, recklessly, and maliciously misrepresented the efficacy, safety, risks, and benefits of Mesh Products, understating the risks and exaggerating the benefits in order to advance their own financial interest, with wanton and willful disregard for the rights, safety and health of Plaintiff.

86.   Plaintiff and his physician(s) were unaware of the defects and dangers of Mesh Products, and were unaware of the frequency, severity and duration of the risks associated with the Mesh Products.

87.   Defendants' Instructions for Use provided with the Mesh Product expressly understates and misstates the risks known to be associated specifically with the Mesh Product.

88.   Defendants' Instructions for Use failed to adequately warn Plaintiff's physician(s) of numerous risks which Defendants knew or should have known were associated with the Mesh Product, including the risks of the product's inhibition of tissue incorporation, pain, immunologic response, dehiscence, encapsulation, rejection, migration, scarification, contraction, adhesion to internal organs and viscera, erosion through adjacent tissue and viscera, bowel obstruction, or hernia incarceration or strangulation.

-23-

89.    Defendants failed to adequately train or warn Plaintiff or his physician(s) about the necessity for invasive surgical intervention in the event of complications, or how to properly treat such complications when they occurred.

90.    Defendants failed to adequately warn Plaintiff or his physician(s) that the surgical removal of the Mesh Product, in the event of complications, would leave the hernia unrepaired and would necessitate further medical treatment to attempt to repair the same hernia that the failed Mesh Product was intended to treat.

91.    With respect to the complications that were listed in Defendants' warnings, Defendants failed to provide information or warnings regarding the frequency, severity, and duration of those complications.

92.    If Plaintiff and/or his physician(s) had been properly warned of the defects and dangers of Mesh Products, and of the frequency, severity and duration of the risks associated with the Mesh Product, Plaintiff would not have consented to the implant, and Plaintiff's physician(s) would not have implanted the Mesh Product. As a direct and proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Mesh Products, Plaintiff has experienced significant mental and physical pain and suffering, have sustained severe and permanent injuries requiring past and future medical treatment, and resulting in disability, impairment, loss of enjoyment of life, loss

of care, comfort, consortium, and have incurred financial or economic loss, including, but not limited to, obligations for medical expenses, lost income, and other damages.

93.    The Defendants are strictly liable to Plaintiff Randall Lipford for their wrongful conduct in failing to properly warn Plaintiff and for designing, manufacturing, marketing, labeling, packaging, and/or selling a defective product.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT V: STRICT LIABILITY – DEFECTIVE PRODUCT

94.    Plaintiff re-alleges and incorporate by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

95.    At the time of Plaintiff's injuries, the Defendants' Products were defective and unreasonably dangerous to foreseeable consumers, patients, and users, including Plaintiff. Additionally, the warnings, labels, and instructions were deficient.

96.    Defendants' Products are dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations of patients and their healthcare providers.

97.    As a direct and proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Products, Plaintiff has been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally, and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VI: BREACH OF EXPRESS WARRANTY

98.    Plaintiff re-alleges and incorporate by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

99.    At all relevant and material times, Defendants manufactured, marketed, sold, distributed and otherwise placed in to the stream of commerce Mesh Products.

100.  In advertising, marketing and otherwise promoting Mesh Products to physician(s), hospitals and other healthcare providers, Defendants expressly

warranted that their Mesh Products was safe for use and reasonably fit for their intended purposes. In advertising, marketing and otherwise promoting Mesh Products, Defendants' intended that physician(s), hospitals and other healthcare providers rely upon their representations regarding safety and fitness in an effort to induce them to implant the Products in their patients.

101. With respect to Plaintiff Randall Lipford, Defendants intended that Mesh Product be implanted by his treating surgeon in the reasonable and foreseeable manner in which it was implanted and in accordance with the instructions for use and product specifications provided by Defendants. Plaintiff Randall Lipford was in privity with Defendants.

102. Defendants expressly warranted to physician(s), hospitals, other healthcare providers and the general public including Plaintiff that Mesh Products was safe and fit for use by consumers, that it was of merchantable quality, that its risks, side effects and potential complications were minimal and comparable to other hernia mesh products, that it was adequately researched and tested, and that it was fit for its intended use. Plaintiff and his physician(s) and healthcare providers reasonably relied upon Defendants' express representations and warranties, and consequently, Plaintiff were implanted with Defendants' Mesh Products.

103. Defendant breached these express warranties because the Products implanted in Plaintiff Randall Lipford were unreasonably dangerous, defective, and not as Defendants had represented.

104. Defendants breached express representations and warranties made to the Plaintiff named in the Short Form Complaint, as well as his physician(s) and healthcare providers, with respect to the Products, including, but not limited to, the following particulars:

    a.    Defendants represented to Plaintiff and his physician(s) and healthcare providers through labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions among other ways that the Defendants' Mesh Products was safe, meanwhile Defendants fraudulently withheld and concealed information about the substantial risks of serious injury associated with using Mesh Products;

    b.    Defendants represented to Plaintiff and his physician(s) and healthcare providers that the Defendants' Mesh Products was as safe and/or safer than other alternative procedures and devices then on the market, meanwhile Defendants fraudulently concealed information that demonstrated that Mesh Products was not safer than alternative therapies and products available on the market; and

    c.    Defendants represented to Plaintiff and his physician(s) and healthcare providers that the Defendants' Mesh Products was more efficacious than other alternative procedures, therapies and/or devices, meanwhile Defendants fraudulently concealed information, regarding the true efficacy of Mesh Products.

105. Defendants' breach of their express warranties resulted in the implantation of unreasonably dangerous and defective product(s) implanted in Plaintiff Randall Lipford, placing said Plaintiff'ss health and safety in jeopardy.

106. At the time of making such express warranties, Defendants knew or should have known that Defendants' Mesh Products does not conform to the express warranties and Defendants' acts were motivated by financial gain while the adverse consequences of Defendants' conduct was outrageous, fraudulent, oppressive, done with malice or gross negligence and evidenced reckless indifference to Plaintiff's rights, health and safety so as to warrant the imposition of punitive damages.

107. As a direct and proximate result of Defendants' breaches of the aforementioned express warranties, Plaintiff has experienced significant mental and physical pain and suffering, have sustained severe and permanent injuries requiring past and future medical treatment, and resulting in disability, impairment, loss of enjoyment of life, loss of care, comfort, consortium, and have incurred financial or economic loss, including, but not limited to, obligations for medical expenses, lost income, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VII: BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS OF PURPOSE

108. Plaintiff re-alleges and incorporate by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

109. At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold the Defendants' Mesh Products.

110. Defendants impliedly warranted that the Products were merchantable and were fit for the ordinary purposes for which they were intended.

111. Defendants impliedly warranted that their Products were of merchantable quality, safe and fit for the intended use of implantation in Plaintiff and were properly and adequately tested prior to being placed in the stream of commerce.

112. When the Products were implanted in the Plaintiff, they were being used for the ordinary purposes for which they were intended.

113. Defendants intended that their Mesh Products be implanted for the purposes and in the manner that Plaintiff's surgeons implanted the Products, in accordance with the instructions for use and product specifications provided by Defendants.

114. Defendants were aware that consumers, such as the Plaintiff, would be implanted with Mesh Products by his treating physician(s) in accordance with the instructions for use and product specifications provided by Defendants.

115. Plaintiff Randall Lipford was a foreseeable user of Defendants' Mesh Products and was in privity with Defendants.

116. Defendants breached implied warranties with respect to the Mesh Products, including the following particulars:

      a.    Defendants represented to Plaintiff and his physician(s) and healthcare providers through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the Defendants' Mesh Products was of merchantable quality and safe when used for its intended purpose meanwhile Defendants fraudulently withheld and concealed information about the substantial risks of serious injury associated with using Mesh Products;

      b.    Defendants represented to Plaintiff and his physician(s) and healthcare providers that the Defendants' Mesh Products was safe, as safe as and/or safer than other alternative procedures and devices, meanwhile Defendants fraudulently concealed information, which demonstrated that the Mesh Products was not safe, as safe as or safer than alternatives and other products available on the market; and

      c.    Defendants represented to Plaintiff and his physician(s) and healthcare providers that the Defendants' Mesh Products were more efficacious than other alternative procedures and/or devices, meanwhile Defendants

fraudulently concealed information, regarding the true efficacy of Mesh Products.

117. Plaintiff Randall Lipford individually and/or by and through his physician, relied upon Defendants' implied warranties in consenting to have the Product(s) implanted.

118. In reliance upon Defendants' implied warranties, Plaintiff's implanting surgeons used Mesh Products to treat Plaintiff in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants and in accordance with the instructions for use and product specification provided by Defendants.

119. Defendants breached their implied warranties to Plaintiff because the Products were not of merchantable quality, safe and fit for their intended use, as warranted, nor were they adequately tested prior to being placed in the stream of commerce.

120. Defendants' breach of their implied warranties resulted in the implantation of unreasonably dangerous and defective product(s) in the body of Plaintiff Randall Lipford, placing said Plaintiff'ss health and safety in jeopardy.

121. Defendants' acts were motivated by financial gain while the adverse consequences of the conduct were actually known by Defendants. Defendants' conduct was outrageous, fraudulent, oppressive, done with malice and with

gross negligence, and evidenced reckless disregard and indifference to Plaintiff's rights, health and safety, so as to warrant the imposition of punitive damages.

122. As a direct and proximate result of Defendants' breach of the aforementioned implied warranties, Plaintiff has experienced significant mental and physical pain and suffering, have sustained severe and permanent injuries requiring past and future medical treatment, and resulting in disability, impairment, loss of enjoyment of life, loss of care, comfort, consortium, and have incurred financial or economic loss, including, but not limited to, obligations for medical expenses, lost income, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VIII: FRAUDULENT CONCEALMENT

123. Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

124. At all times relevant hereto, it was known or knowable to Defendants that their Products caused large numbers of complications. Moreover, it was known or knowable to Defendants that the surgical technique

and training of implanting physician(s) was not the cause of the adverse events associated with these devices. It was known or knowable to Defendants that the safety and efficacy of its Products had not been proven with respect to, among other things, the product, its components, its performance, and its method of insertion. It was known or knowable to Defendants that the Products were not safe and effective. Defendants continued to represent that its Products were safe and effective.

125. Despite what was known or knowable to Defendants about the lack of safety and efficacy of its Products, Defendants failed to disclose this information to the Plaintiff, to his physician(s), and to the public at large.

126. At all times relevant hereto, Defendants had the duty and obligation to disclose to Plaintiff and his physician(s) the true facts concerning the Products, that is, that said Products were dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users, including permanent and debilitating injuries. Defendants concealed these material facts prior to the time that Plaintiff were implanted with Defendants' Products.

127. Defendants were under a duty to Plaintiff to disclose and warn of the defective nature of the Products because:

        a.     Defendants were in a superior position to know the true quality, safety, and efficacy of its Products;

    b.    Defendants knowingly made false claims about the safety and quality of its Products in documents and marketing materials;

    c.    Defendants fraudulently and affirmatively concealed the defective nature of the Products from the Plaintiff.

128.  The facts concealed and/or not disclosed by Defendants to Plaintiff were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' Products.

129.  At all times relevant hereto, Defendants and each of them, willfully, intentionally, and maliciously concealed facts as set forth above from Plaintiff and his physician(s) with the intent to defraud, as alleged herein.

130.  Defendants intentionally concealed and/or failed to disclose the true defective nature of the Products so that Plaintiff would request and purchase the Defendants' Products, and their healthcare providers would dispense, prescribe, and recommend the Defendants' Products, and Plaintiff justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment.

131.  At all times relevant hereto, neither Plaintiff nor his physician(s) were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representations of safety and efficacy and utilized Defendants' Products in their treatment. Defendants' failure to disclose this information was

a substantial factor in Plaintiff's physician(s) selecting Defendants' Products. The failure to disclose also resulted in the provision of incorrect and incomplete information to Plaintiff, as patients.

132. As a direct and proximate result of this conduct, Plaintiff was injured.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally, and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, an such further relief as the Court deems equitable and just.

## COUNT IX: CONSTRUCTIVE FRAUD

133. Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

134. Defendants are in a unique position of knowledge concerning the quality, safety, and efficacy of the Defendants' Products; knowledge that is not possessed by Plaintiff or his physician(s). Defendants thereby hold a position of superiority over Plaintiff and his physician(s).

135. Despite their unique and superior knowledge regarding the defective nature of the Products, Defendants continue to suppress, conceal, omit, and/or misrepresent information to Plaintiff, the medical community, and the public concerning the severity and frequency of risks and dangerous inherent in the

intended use of its Products, as compared to other products and forms of treatment.

136. Defendants have concealed and suppressed material information that would reveal that the Products had a higher risk of adverse effects, in addition to, and exceeding those associated with alternative procedures and available devices. Instead, Defendants have misrepresented the safety and efficacy of the Products.

137. Upon information and belief, Defendants' misrepresentation are designed to induce physician(s) to prescribe, dispense, recommend, and/or purchase the Defendants' Products. Plaintiff and the medical community have relied upon Defendants' misrepresentations.

138. Defendants took unconscionable advantage of their dominant position of knowledge with regard to Plaintiff and their healthcare providers, and engaged in constructive fraud in their relationship with Plaintiff and their medical providers. Plaintiff reasonably relied on Defendants' representations.

139. As a proximate cause of the Defendants' conduct, Plaintiff has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally, and in the alternative, request

compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT X: DISCOVERY RULE, TOLLING, AND FRAUDULENT CONCEALMENT

140. Plaintiff re-alleges and incorporate by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

141. Plaintiff assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, class action tolling, delayed discovery, discovery rule, and fraudulent concealment.

142. Plaintiff plead that the discovery rule should be applied to toll the running of the statute until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicated that Plaintiff had been injured, the cause of the injury, and the tortious nature of the wrongdoing that caused the injury.

143. Despite diligent investigation by Plaintiff into the cause of their injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages, and their relationship to the Products was not discovered, and through reasonable care and diligence could not have been discovered until a date within the applicable statute of limitations for filing

Plaintiff's claims. Therefore, under appropriate application of the discovery rule, Plaintiff's suits were filed well within the applicable statutory limitations period.

144.   The running of the statute of limitations in this cause of action is tolled due to equitable tolling. Defendants are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through misrepresentations and omissions, from Plaintiff and Plaintiff's physician(s) of the true risks associated with the Products. As a result of Defendants' fraudulent concealment, Plaintiff and Plaintiff's physician(s) were unaware, and could not have known or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendants.

## COUNT XI: NEGLIGENT MISREPRESENTATION

145.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

146.   Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiff, and the public, that its Products had not been adequately tested and found to be a safe and effective treatment. The representations made by Defendants were, in fact, false.

147. Defendants failed to exercise ordinary care in the representations concerning the Products while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the Products' high risk of unreasonable and dangerous adverse side effects.

148. Defendants breached their duty in representing that the Defendants' Products have no serious side effects different from older generations of similar products and/or procedures to Plaintiff, Plaintiff's physician(s), and the medical community.

149. As a foreseeable, direct, and proximate result of the negligent misrepresentation of Defendants, as set forth herein, Defendants knew, and had reason to know, that the Products had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that they created a high risk—and/or higher than acceptable risk, and/or higher than reported and represented risk—of adverse side effects, including, but not limited to, pain, graft rejection, graft migration, organ damage, complex seroma, fistula, sinus tract formation, delayed wound closure, infection, sepsis, and death.

150. As a direct and proximate result of the Defendants' conduct, Plaintiff has been injured and sustained severe and permanent pain, suffering,

disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT XII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

151. Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

152. Defendants carelessly and negligently manufactured, designed, developed, tested, labeled, marketed, and sold the Products to Plaintiff, carelessly and negligently concealing the harmful effects of the Products from Plaintiff, and carelessly and negligently misrepresented the quality, safety and efficacy of the Products.

153. Defendants carelessly and negligently concealed the harmful effects of the Products from Plaintiff individually and/or Plaintiff's physician on multiple occasions and continue to do so to this day.

154. As a result of Defendants carelessly and negligently concealing the harmful effects of the Product, Plaintiff's symptoms and injuries not taken seriously and/or were not adequately treated on multiple occasions.

155. Plaintiff suffered severe emotional distress due to their injuries and symptoms not being taken seriously and/or not being adequately treated.

156. Plaintiff were directly impacted by Defendants' carelessness and negligence, in that Plaintiff has sustained and will continue to sustain emotional distress, severe physical injuries and/or death, economic losses, and other damages as a direct result of being implanted with the Products sold and distributed by Defendants.

157. As a direct and proximate result of Defendants' conduct, Plaintiff has been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them individually, jointly, and severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XIII: VIOLATION OF CONSUMER PROTECTION LAWS

158. Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

159. Plaintiff, by and through his treating physician(s), were implanted with Defendants' Mesh Products primarily for the personal use and purpose of treating their physical medical conditions and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

160. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Plaintiff for the Products that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

161. Defendants engaged in unfair methods of competition and/or deceptive acts or practices that were prescribed by law, including the following:

      a.    Representing that goods or services have characteristics, ingredients, uses, benefits or qualities that they do not have.

      b.    Advertising goods or services with the intent not to sell them as advertised; and,

      c.    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

162. Plaintiff were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physician(s) and consumers was to create demand for and sell the Defendants' Products. Each aspect of Defendants' conduct combined to artificially create sales of Defendants' Products.

163. Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, marketing, promotion, and sale of surgical mesh products.

164. Had Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or otherwise been implanted with Defendants' Products, and would not have suffered permanent physical injury as described herein and incurred related medical costs and injuries.

165. Defendants' deceptive, unconscionable and/or fraudulent representations and material omissions to patients, physician(s) and consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of state and federal consumer protection statutes.

166. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of federal and state consumer protection statutes.

167. Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of the statutory provisions of the Plaintiff's respective states.

168. Under the applicable statutes to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendants are the suppliers, manufacturers, advertisers, and

sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

169.  Defendants violated the statutes enacted in these States to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Defendants' Products were fit to be used for its intended purpose, while, in fact, the Products were defective and dangerous, and by other acts alleged herein. These representations were made in marketing and promotional materials.

170.  The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

171.  Defendants had actual knowledge of the defective and dangerous condition of Defendants' Products and failed to take any action to cure such defective and dangerous conditions to the detriment of Plaintiff and other consumers.

172. Plaintiff and the medical community relied upon Defendants' misrepresentations and omissions in determining whether to use Defendants' Products.

173. Defendants' deceptive, unconscionable or fraudulent representations and material omissions to patients, physician(s) and consumers, constituted unfair and deceptive acts and practices.

174. By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiff has suffered ascertainable losses and damages.

175. As a direct and proximate result of Defendants' violations of the consumer protection laws, Plaintiff has sustained economic losses and other damages, and is entitled to statutory and compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request restitution and disgorgement of profits, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XIV: GROSS NEGLIGENCE

176. Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

177. The wrongs done by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff such that Plaintiff will seek, at the appropriate time under

governing law, the imposition of exemplary damages, in that Defendants' conduct was specifically intended to cause substantial injury to Plaintiff; or, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually and subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, welfare of others, or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff.

178. Plaintiff relied on the representation and suffered injuries as a proximate result of this reliance.

179. Plaintiff therefore will seek to assert claims for exemplary damages, at the appropriate time, under governing law in an amount within the jurisdictional limits of the Court.

180. Plaintiff further allege that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused injuries to Plaintiff. In that regard, Plaintiff will seek exemplary damages in an amount that would punish Defendants for their conduct and which would deter other manufacturers from engaged in such misconduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XV: UNJUST ENRICHMENT

181. Plaintiff re-alleges and incorporate by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

182. Defendants are, and at all times relevant were, manufacturers, sellers, and/or suppliers of the Products.

183. Plaintiff paid for Defendants' Products for the purpose of medical treatment.

184. Defendants have accepted payment by Plaintiff and others on Plaintiff's behalf for the purchase of Defendants' Products.

185. Plaintiff has not received the safe and effective medical devices for which they paid.

186. It would be inequitable for Defendants to keep this money since Plaintiff did not in fact receive a safe and effective medical device, as represented by Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests

compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XVI: PUNITIVE OR ENHANCED COMPENSATORY DAMAGES

187. Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if each were set forth fully and completely herein.

188. Defendants sold their Products to the healthcare providers of Plaintiff Randall Lipford, and other healthcare providers throughout the United States without doing adequate testing to ensure that the Products were reasonably safe and effective for permanent, human implantation. Defendants continued to manufacture and sell Mesh Products after obtaining knowledge and information that the product was defective and unreasonably unsafe.

189. Even though Defendants have other hernia mesh devices that do not present the same risks as the Mesh Products, Defendants developed, designed, and sold Mesh Products, and continue to do so, because the Mesh Products has a significantly higher profit margin than other hernia repair products. Defendants were aware of the probable consequences of implantation of the dangerous and defective Mesh Products, including the risk of failure and serious injury, such as suffered by Plaintiff.

190. At all times relevant hereto, Defendants knew or should have known that Mesh Products was inherently more dangerous with respect to the

-49-

risks of foreign body response, allergic reactions, rejection, infection, failure, erosion, pain and suffering, organ perforation, dense adhesions, loss of life's enjoyment, remedial surgeries and treatments in an effort to cure the conditions proximately related to the use of the product, as well as other severe and personal injuries which are permanent and lasting in nature.

191. Defendants willfully and recklessly failed to avoid those consequences and, in doing so, Defendants acted intentionally, maliciously, and recklessly without regard to the safety of those persons who might foreseeably be harmed by the Defendants' Products, including Plaintiff Randall Lipford.

192. At all times material hereto, Defendants attempted to misrepresent and did intentionally and knowingly misrepresent facts concerning the safety of their Mesh Products.

193. Defendants' misrepresentation included knowingly withholding material information from the medical community and the public, including Plaintiff, concerning the safety and efficacy of the Mesh Products, which deprived Plaintiff and their implanting physician(s) of vitally necessary information with which to make a fully informed decision about whether to use Mesh Products.

194. At all times material hereto, Defendants knew and recklessly and/or intentionally disregarded the fact that the Defendants' Mesh Products can cause

debilitating and potentially life- threatening side effects with greater frequency than safer alternative methods, products, procedures, and/or treatment.

195.  At all times material hereto, Defendants knew and recklessly and/or intentionally disregarded the fact that Mesh Products can cause debilitating and potentially life-threatening side effects with greater frequency than safer alternative products and/or methods of treatment and recklessly failed to advise the medical community and the general public, including Plaintiff, of the same.

196.  At all times material hereto, Defendants intentionally misstated and misrepresented data and continue to misrepresent data so as to minimize the perceived risk of injuries and the rate of complication caused by and associated with Mesh Products.

197.  Notwithstanding the foregoing and the growing body of knowledge and information regarding the true defective nature of Mesh Products with its increased risk of side effects and serious complications, Defendants continue to aggressively market Mesh Products to the medical community and to consumers without disclosing the true risk of such complications and side effects.

198.  At the time Plaintiff Randall Lipford was implanted with Mesh Products and since that time, Defendants knew that Mesh Products was defective and unreasonably dangerous but continued to manufacture, produce, assemble, market, distribute, and sell Mesh Products so as to maximize sales

and profits at the expense of the health and safety of the public in a conscious, reckless and/or intentional disregard of the likely and foreseeable harm caused by Mesh Products to members of the public, including Plaintiff.

199. At all times material, Defendants have concealed and/or failed to disclose to the public the serious risks and the potential complications associated with Mesh Products in order to ensure continued and increased sales and profits to the detriment of the public, including Plaintiff.

200. Defendants' conduct, acts and omissions, as described herein, are of such character and nature so as to entitle Plaintiff to an award of punitive damages in accordance with applicable statutory and common law. Defendants' conduct shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages or enhanced compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **PRAYER FOR RELIEF**

Plaintiff demands judgment against Defendants, and each of them, individually, jointly and severally and prays for the following relief in accordance with applicable law and equity:

i.   Compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, permanent impairment, mental pain and suffering, loss of enjoyment of life, past and future health and medical care costs, and economic damages including past and future lost earnings and/or earning capacity, together with interest and costs as provided by law;

ii.   Restitution and disgorgement of profits;

iii.   Punitive or enhanced compensatory damages;

iv.   Reasonable attorneys' fees as provided by law;

v.   The costs of these proceedings, including past a future cost of the suit incurred herein;

vi.   All ascertainable economic damages;

vii.   Wrongful death damages (if applicable);

viii.   Prejudgment interest on all damages as is allowed by law; and

ix.   Such other and further relief as this Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 21st day of March, 2022.

Respectfully submitted,

**RANDALL LIPFORD, PLAINTIFF**

By:_____

DAVID A. HODGES
**Attorney at Law**
**212 Center Street, Fifth Floor**
**Little Rock, Arkansas 72201-2419**
**Arkansas Bar No. 65021**
**T  (501) 374-2400**
**F  (501) 374-8926**
**david@hodgeslaw.com**

—and—

**L. GRAY DELLINGER**
**Attorney at Law**
**P.O. Box 246**
**Melbourne, AR 72556**
**Arkansas Bar No. 69015**
**T  870-368-4317**
**F  870-368-4710**
**graydellinger@ymail.com**